ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X
    UNITED STATES OF AMERICA    :

            - v. -              :    SEALED INDICTMENT

    RAZHDEN SHULAYA,              :    17 Cr.
      a/k/a "Brother,"
      a/k/a "Roma,"                **17 CRIM 350**
    ZURAB DZHANASHVILI,
      a/k/a "Zura,"
    AKAKI UBILAVA,
      a/k/a "Ako,"
    HAMLET UGLAVA,
    MAMUKA CHAGANAVA,
    MIKHEIL TORADZE,
    AVTANDIL KANADASHVILI,
    NAZO GAPRINDASHVILI,           USDC SDNY
      a/k/a "Anna,"                   DOCUMENT
    ARTUR VINOKUROV                ELECTRONICALLY FILED
      a/k/a "Rizhy,"                DOC #: _____
    EVGHENI MELMAN,                DATE FILED: **JUN 0 6 2017**
    TIMUR SUYUNOV,
    ZURAB BUZIASHVILI,
    GIORGI LOMISHVILI
    AZER ARSLANOUK,
    IVAN AFANASYEV,
      a/k/a "Vanya,"
    DENIS SAVGIR
    BAKAI MARAT-UULU
    ANDRIY PETRUSHYN,
    DIEGO GABISONIA,
    LEVAN MAKASHVILI,
    SEMYON SARAIDAROV,
      a/k/a "Sammy,"
    VACHE HOVHANNISYAN,
    DENYS DAVYDOV,
    EREKLE KERESELIDZE,

    [CONTINUED BELOW]

```
ALEX MITSELMAKHER,                    :
    a/k/a "Globus," and               :
YURIY LERNER,                         :
    a/k/a "Yuri,"                     :
                                      :
            Defendants.               :
                                      :
- - - - - - - - - - - - - - - - - - - X
```

## COUNT ONE

(Racketeering Conspiracy)

The Grand Jury charges:

### THE SHULAYA ENTERPRISE

1.  At all times relevant to this Indictment, RAZHDEN SHULAYA, a/k/a "Brother," a/k/a "Roma," ZURAB DZHANASHVILI, a/k/a "Zura," AKAKI UBILAVA, a/k/a "Ako," HAMLET UGLAVA, MAMUKA CHAGANAVA, MIKHEIL TORADZE, NAZO GAPRINDASHVILI, a/k/a "Anna," ARTUR VINOKUROV, a/k/a "Rizhy," EVGHENI MELMAN, TIMUR SUYUNOV, ZURAB BUZIASHVILI, GIORGI LOMISHVILI, AZER ARSLANOUK, IVAN AFANASYEV, a/k/a "Vanya," DENIS SAVGIR, DIEGO GABISONIA, LEVAN MAKASHVILI, SEMYON SARAIDAROV, a/k/a "Sammy," and VACHE HOVHANNISYAN, the defendants, and others known and unknown, were members and associates of the "Shulaya Enterprise." The Shulaya Enterprise was an organized criminal group operating under the direction and protection of SHULAYA, a "*vor v zakonei*" or "*vor*," which are Russian phrases translated roughly as "Thief-in-Law" or "Thief," and which refer to an order of elite criminals from the former Soviet Union who receive tribute from other

criminals, offer protection, and use their recognized status as "*vor*" to adjudicate disputes among lower-level criminals. As a *vor*, SHULAYA had substantial influence in the criminal underworld and offered assistance to and protection of the members and associates of the Shulaya Enterprise. Those members and associates, and SHULAYA himself, engaged in widespread criminal activities, including acts of violence, extortion, the operation of illegal gambling businesses, fraud on various casinos, identity theft, credit card frauds, and trafficking in large quantities of stolen goods.

2.   The Shulaya Enterprise, including its leadership, membership, and associates, constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity (the "Enterprise"). This Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Shulaya Enterprise was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### THE SHULAYA ENTERPRISE LEADERSHIP

3.   The Shulaya Enterprise operated through groups of individuals, often with overlapping members or associates, dedicated to particular criminal tasks. While many of these crews were based

in New York City, the Shulaya Enterprise had operations in various locations throughout the United States (including in New Jersey, Pennsylvania, Florida, and Nevada) and abroad. Most members and associates of the Shulaya Enterprise were born in the former Soviet Union and many maintained substantial ties to Georgia, the Ukraine, and the Russian Federation, including regular travel to those countries, communication with associates in those countries, and the transfer of criminal proceeds to individuals in those countries.

    4.  The Shulaya Enterprise was led principally by two individuals, RAZHDEN SHULAYA, a/k/a "Brother," a/k/a "Roma," and ZURAB DZHANASHVILI, a/k/a "Zura," the defendants, who each coordinated and directed lower-level members and associates of the Shulaya Enterprise.

    5.  RAZHDEN SHULAYA, a/k/a "Brother," a/k/a "Roma," the defendant, was at the center of the Shulaya Enterprise, and, as a *vor*, was entitled to tribute payments and other benefits provided by his loyal subordinates within or associated with the Shulaya Enterprise. SHULAYA oversaw the following criminal activities, among others: illegal gambling activities; efforts to extort those who owed debts to the Shulaya Enterprise's gambling operation and others; trafficking in contraband cigarettes and stolen merchandise; efforts to defraud casinos through the use of electronic devices and software designed to predict the behavior of particular models of electronic "slot" machines; access device fraud and identity theft; narcotics

4

trafficking; efforts to rob wealthy persons; and the use of violence to maintain control over his criminal operation.

   6.  ZURAB DZHANASHVILI, a/k/a "Zura," was a principal lieutenant within the Shulaya Enterprise, who supported and coordinated various criminal activities involving numerous members and associates of the Shulaya Enterprise. In his role as a lieutenant within the Shulaya Enterprise, DZHANASHVILI coordinated the following criminal activities, among others: illegal gambling activities; efforts to extort those who owed debts to the Shulaya Enterprise's gambling operation and others; trafficking in contraband cigarettes and stolen merchandise; access device fraud and identity theft; and the use of a female member of the Shulaya Enterprise to lure victims into circumstances in which DZHANASHVILI and others would rob those victims.

### PURPOSES OF THE ENTERPRISE

   7.  The purposes of the Shulaya Enterprise included the following:

   a.  Enriching the members and associates of the Shulaya Enterprise through, among other things, (i) the operation of illegal gambling businesses; (ii) the extortionate control of businesses, persons, and property through threats of physical and economic harm; (iii) robbery; (iv) the receipt, sale, and transportation of contraband cigarettes; (v) the receipt, sale, and transportation of stolen goods; (vi) the use of counterfeit

5

credit cards and stolen personal identifying information; (vii) the use of electronic devices and software designed to defraud casinos; and (viii) narcotics trafficking.

        b.    Preserving and protecting the power and financial profits of the Shulaya Enterprise through intimidation, violence, and threats of physical and economic harm;

        c.    Promoting and enhancing the Shulaya Enterprise and the activities of its members and associates; and

        d.    Keeping victims and citizens in fear of the Shulaya Enterprise and associates by: (i) identifying the Shulaya Enterprise, its members, and its associates with RAZHDEN SHULAYA, a/k/a "Brother," a/k/a "Roma," the defendant, and his status as a *vor*; (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

### MEANS AND METHODS OF THE ENTERPRISE

8.    Among the means and methods employed by the members and associates in conducting and participating in the affairs of the Shulaya Enterprise were the following:

        a.    To protect and expand the Shulaya Enterprise's business and criminal operations, members and associates of the Shulaya Enterprise conspired to threaten, assault, and intimidate persons who engaged in activity that jeopardized (i) the power and criminal activities of the Shulaya Enterprise; (ii) the power of leaders of the Shulaya Enterprise; and (iii) the flow of criminal

proceeds to the Shulaya Enterprise.

        b.    Members and associates of the Shulaya Enterprise generated income for the Enterprise through, among other things (i) the operation of illegal gambling businesses; (ii) the extortionate control of businesses, persons, and property through threats of physical and economic harm; (iii) robbery; (iv) the receipt, sale, and transportation of contraband cigarettes; (v) the receipt, sale, and transportation of stolen goods; (vi) the use of counterfeit credit cards and stolen personal identifying information; (vii) the use of electronic devices and software designed to defraud casinos; and (viii) narcotics trafficking.

        c.    Members and associates of the Enterprise at times engaged in criminal conduct and coordinated their criminal activities with leaders, members, and associates of other criminal associations.

        d.    Members and associates of the Shulaya Enterprise used various techniques to avoid law enforcement scrutiny of the Shulaya Enterprise's criminal activities. Members and associates of the Shulaya Enterprise typically used coded language to make arrangements for meetings and to refer to other members and associates of the Shulaya Enterprise, and took other steps to frustrate law enforcement's efforts to overhear their discussions. Members and associates of the Shulaya Enterprise also engaged in other evasive conduct, such as the use of

proceeds to the Shulaya Enterprise.

        b.    Members and associates of the Shulaya Enterprise generated income for the Enterprise through, among other things (i) the operation of illegal gambling businesses; (ii) the extortionate control of businesses, persons, and property through threats of physical and economic harm; (iii) robbery; (iv) the receipt, sale, and transportation of contraband cigarettes; (v) the receipt, sale, and transportation of stolen goods; (vi) the use of counterfeit credit cards and stolen personal identifying information; (vii) the use of electronic devices and software designed to defraud casinos; and (viii) narcotics trafficking.

        c.    Members and associates of the Enterprise at times engaged in criminal conduct and coordinated their criminal activities with leaders, members, and associates of other criminal associations.

        d.    Members and associates of the Shulaya Enterprise used various techniques to avoid law enforcement scrutiny of the Shulaya Enterprise's criminal activities. Members and associates of the Shulaya Enterprise typically used coded language to make arrangements for meetings and to refer to other members and associates of the Shulaya Enterprise, and took other steps to frustrate law enforcement's efforts to overhear their discussions. Members and associates of the Shulaya Enterprise also engaged in other evasive conduct, such as the use of

particular cellular telephones for the discussion of particular criminal activities, the use of encrypted communications applications and devices when discussing criminal activities in an effort to thwart potential law enforcement eavesdropping, and the omission of names of those about whom they were speaking. Members and associates of the Shulaya Enterprise also attempted to thwart potential law enforcement eavesdropping by engaging in "in-person" meetings to discuss criminal activities and by stating that certain conversations should be conducted in person, and not by telephone.

## THE RACKETEERING CONSPIRACY

9. From at least in or about 2014, up to and including the date of the indictment, in the Southern District of New York and elsewhere, RAZHDEN SHULAYA, a/k/a "Brother," a/k/a "Roma," ZURAB DZHANASHVILI, a/k/a "Zura," AKAKI UBILAVA, a/k/a "Ako," HAMLET UGLAVA, MAMUKA CHAGANAVA, MIKHEIL TORADZE, NAZO GAPRINDASHVILI, a/k/a "Anna," ARTUR VINOKUROV, a/k/a "Rizhy," EVGHENI MELMAN, TIMUR SUYUNOV, ZURAB BUZIASHVILI, GIORGI LOMISHVILI, AZER ARSLANOUK, IVAN AFANASYEV, a/k/a "Vanya," DENIS SAVGIR, DIEGO GABISONIA, LEVAN MAKASHVILI, SEMYON SARAIDAROV, a/k/a "Sammy," and VACHE HOVHANNISYAN, the defendants, and others known and unknown, being persons employed by and associated with the Enterprise described above, namely, the Shulaya Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined,

conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Shulaya Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple:

    a. Acts and threats involving extortion, in violation of New York State Penal Law, Sections 155.40, 105.10, and 110.00;

    b. Acts involving robbery, in violation of New Jersey Code of Criminal Justice, Sections 2C:15-1, 2C:5-1, and 2C:5-2.

    c. Acts indictable under Title 18, United States Code, Section 1951 (relating to extortion);

    d. Acts involving gambling, in violation of New York State Penal Law, Section 225.10;

    e. Acts indictable under Title 18, United States Code, Section 1955 (relating to the prohibition of illegal gambling businesses);

    f. Acts indictable under Title 18, United States Code, Section 1343 (wire fraud);

    g. Acts indictable under Title 18, United States Code, Section 2314 (interstate transportation of stolen property);

      h.    Acts indictable under Title 18, United States Code, Section 2315 (interstate receipt and possession of stolen property);

      i.    Acts indictable under Title 18, United States Code, Section 2342 (shipping, transporting, receiving, possessing, selling, distributing, and purchasing contraband cigarettes);

      j.    Acts indictable under Title 18, United States Code, Section 1028 (fraud and related activity in connection with identification documents);

      k.    Acts indictable under Title 18, United States Code, Section 1029 (access device fraud); and

      l.    Offenses involving the felonious trafficking of controlled substances in violation of Title 21, United States Code, Sections 841, 843, and 846 (narcotics trafficking and use of wire facilities to further narcotics trafficking).

      10.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise.

### Overt Acts

      11.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

      a.    On or about December 11, 2014, RAZHDEN SHULAYA, a/k/a "Brother," a/k/a "Roma," and MAMUKA CHAGANAVA, the

defendants, in Manhattan, New York, negotiated the sale of stolen jewelry to a confidential source working at the direction of the Federal Bureau of Investigation ("CS-1").

    b. On or about March 23, 2015, in Atlantic City, New Jersey, SHULAYA and ZURAB DZHANASHVILI, a/k/a "Zura," the defendants, negotiated for the purchase, and in fact received, cigarettes that SHULAYA and DZHANASHVILI understood to have been stolen from a facility in another state.

    c. On or about May 9, 2015, CHAGANAVA, at SHULAYA's direction, received, in the vicinity of Avenue X in Brooklyn, New York, four cases of purportedly stolen cigarettes from CS-1, to whom CHAGANAVA provided approximately $9,440 in payment for purportedly stolen cigarettes.

    d. On or about August 9, 2015, SHULAYA and ARTUR VINOKUROV, a/k/a "Rizhy," the defendant, received, in the vicinity of Cropsey Avenue, Brooklyn, New York, eleven cases of purportedly stolen cigarettes from CS-1.

    e. On or about August 18, 2015, SHULAYA and VINOKUROV, received, in the vicinity of Cropsey Avenue, Brooklyn, New York, ten cases of purportedly stolen cigarettes from CS-1, and subsequently paid CS-1 approximately $12,000 for purportedly stolen cigarettes.

    f. On or about September 2, 2015, MIKHEIL TORADZE, the defendant, received, in the vicinity of Bath Avenue,

11

Brooklyn, New York, three cases of purportedly stolen cigarettes from CS-1, and paid CS-1 approximately $17,800 for purportedly stolen cigarettes previously provided to CHAGANAVA and the Shulaya Enterprise.

    g. On or about September 17, 2015, TORADZE received, in the vicinity of Bath Avenue, Brooklyn, New York, five cases of purportedly stolen cigarettes and paid CS-1 approximately $5,000 for purportedly stolen cigarettes.

    h. In or about January 2016, SHULAYA and NAZO GAPRINDASHVILI, a/k/a "Anna," attempted to extort approximately $100,000 from the owner of a business located in the vicinity of Brighton Beach Avenue, Brooklyn, New York.

    i. On or about February 19, 2016, in the vicinity of Brighton Beach Avenue, Brooklyn, New York, at an illegal gambling establishment belonging to the Shulaya Enterprise (the "Poker House"), SHULAYA and others assaulted CHAGANAVA in retaliation for CHAGANAVA's failure to remit sufficient tribute payments to SHULAYA.

    j. On or about April 7, 2016, in the vicinity of Bay Parkway, Brooklyn, New York, HAMLET UGLAVA, the defendant, and SHULAYA received ten cases of purportedly stolen cigarettes from CS-1.

    k. On or about June 23, 2016, in the vicinity of 59th Street, Brooklyn, New York, HAMLET UGLAVA, the defendant, and

12

SHULAYA received ten cases of purportedly stolen cigarettes from CS-1.

l.  On or about July 25, 2016, in the vicinity of Brighton Beach Avenue, Brooklyn, New York, SHULAYA, DZHANASHVILI, and AKAKI UBILAVA, a/k/a "Ako," the defendants, met at an illegal gambling establishment belonging to the Shulaya Enterprise (the "Poker House") for the purpose of tallying approximately $70,000 in gambling proceeds from a poker game that took place on or about July 22, 2016.

m.  On or about July 25, 2016, in the vicinity of Brighton Beach Avenue, Brooklyn, New York, SHULAYA assaulted a confidential source ("CS-2") who, at the direction of law enforcement, had previously worked as a dealer at the Poker House.

n.  On or about September 1, 2016, in the vicinity of 59th Street, Brooklyn, New York, UBILAVA, acting at SHULAYA's direction, received a "Pelican Pete" electronic "slot" machine from CS-1 and transported that machine to an apartment belonging to GAPRINDASHVILI.

o.  In or about October 2016, AZER ARSLANOUK, the defendant, and SHULAYA, among others, jointly invested funds into the operation of an after-hours club (the "59th Street Club"), hosting, among other things, the availability of narcotics for purchase by patrons of the 59th Street Club, in connection with which ARSLANOUK provided bribes to local law enforcement officers

13

to permit the narcotics activity.

    p. On or about December 14, 2016, DZHANASHVILI and TIMUR SUYUNOV, the defendant, discussed the preparation of falsified bills of lading for use in the transportation and sale of stolen merchandise.

    q. On or about January 6, 2017, ARSLANOUK and SHULAYA, in the vicinity of Weehawken, New Jersey, met to discuss the future operation of after-hours clubs of the same type as the 59th Street Club, hosting, among other things, the availability of narcotics purchases for patrons of such clubs.

    r. On or about January 15, 2017, SHULAYA and EVGHENI MELMAN, the defendant, on a telephone call intercepted pursuant to judicial authorization, tested the operability of devices used by the Shulaya Enterprise for the purpose of defrauding casinos by predicting the behavior of particular models of electronic slot machines.

    s. On or about January 17, 2017, on a telephone call intercepted pursuant to judicial authorization, DIEGO GABISONIA, the defendant, reported to SHULAYA that GABISONIA had completed reconnaissance of a casino that featured the particular model of electronic slot machine susceptible to the Shulaya Enterprise's scheme to defraud casinos by predicting the behavior of that model of electronic slot machines.

14

t. On or about January 25, 2017, SHULAYA and LEVAN MAKASHVILI, the defendant, demonstrated to CS-1 the means by which the Shulaya Enterprise would use electronic devices and software designed to predict the behavior of particular models of electronic "slot" machines in order to defraud casinos.

u. On or about January 27, 2017, SHULAYA and MELMAN, on a telephone call intercepted pursuant to judicial authorization, arranged the transportation of two devices to be used by the Shulaya Enterprise in preparation for defrauding casinos by predicting the behavior of particular models of electronic slot machines.

v. On or about February 12, 2017, in the vicinity of Miami, Florida, SUYUNOV and another individual ("CC-1") were arrested in possession of devices for the creation of counterfeit credit cards, as well as an electronic device containing stolen personal identifying information, including bank account numbers.

w. On or about February 22, 2017, SHULAYA and MELMAN, on a telephone call intercepted pursuant to judicial authorization, arranged the performance of maintenance of computer servers and processors, certain of which were malfunctioning, in furtherance of the scheme to defraud casinos by predicting the behavior of particular models of electronic slot machines.

x. On or about February 13, 2017, DZHANASHVILI, on a telephone call intercepted pursuant to judicial

15