```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            17 Cr. 350 (KBF)

RAZHDEN SHULAYA,

              Defendant.           Bail

------------------------------x
                                        New York, N.Y.
                                        June 29, 2017
                                        10:05 a.m.


Before:

              HON. KATHERINE B. FORREST,

                                        District Judge


                    APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
ANDREW ADAMS
     Assistant United States Attorney

PETER KAPITONOV
     Attorney for Defendant



ALSO PRESENT:  NELLY ALISHAEV, Interpreter (Russian)
               NESHAUN RICHARDS, FBI
               ROBERT HANRATTY, FBI
```

1            (Case called)
2            THE COURT:  I want to make sure that I get your name
3    pronounced correctly.  Is it Kapitonov?
4            MR. KAPITONOV:  Kapitonov.
5            THE COURT:  Mr. Kapitonov for Mr. Shulaya.
6            MR. KAPITONOV:  Yes, your Honor.
7            THE COURT:  Mr. Shulaya, you can be seated, sir.
8            Mr. Kapitonov, go ahead and make your application,
9    sir, or give me a preview of it if you are not prepared to make
10   it right now.
11           MR. KAPITONOV:  No, your Honor. My client is a lawful
12   permanent resident.  He has resided in the United States for
13   approximately 17 years.  He has a wife.  His wife was supposed
14   to be on the way.  I believe there was an accident or some kind
15   of investigation on the Brooklyn Bridge.  I have been in
16   constant contact with her.  He has friends in the audience who
17   are willing to act as sureties for him.  He has been working in
18   the United States.  He resides in the tristate area.  He has an
19   apartment in Edgewater.  His wife resides in Queens.  They
20   reside together.  Although they are apartments, he does have
21   ties to the community.  There is no real estate holdings.  But
22   he is established in the community, for that matter.  And
23   that's evidenced by the fact that he has friends in the
24   audience.
25           I understand that there is an issue in Russia.  So the

1  pretrial services report addressed that there was a warrant out
2  of Russia. I submit that that is actually a reason why he
3  would not flee the country, as he risks arrest if he shows up
4  in Russia.
5       THE COURT: Let me just ask you, Mr. Kapitonov, before
6  you proceed, do you have a copy -- I literally did not know a
7  bail application until you mentioned it at the end, so I don't
8  yet have in front of me a copy of the pretrial services report.
9  Do you have a copy of it?
10       MR. KAPITONOV: I reviewed a copy. It was taken back.
11       THE COURT: We will print it off before we complete
12  this.
13       Keep going, Mr. Kapitonov.
14       MR. KAPITONOV: I guess when you see the report. It
15  does say that he has a warrant in Russia. That warrant it says
16  for an offense that occurred in 2002. However, the warrant was
17  not issued until 2016, which I submit is rather suspect, for
18  one. And two, again, if he has a warrant in Russia, that
19  simply ensures that he will not flee the United States and will
20  not go to Russia. I believe that his passport was already
21  taken in. If not, he will absolutely submit all travel
22  documents to the government and will not apply for new travel
23  documents. I think that he will come back to court.
24       Again, he will be unduly prejudiced if he is kept in a
25  remand status. As you mentioned during this conference, this

1    is a massive case.  There is massive volumes of discovery.  It
2    would be prejudicial to me to represent him if I'm unable -- if
3    he is in custody, one, it is very hard to get hard drives and
4    other items into custody.  Two, simply the time that would
5    require for me to spend with my client in order to prepare for
6    this case.  It would be extremely difficult to do it with my
7    client in custody and it would impose an unfair financial
8    burden because I would have to do everything in the
9    Metropolitan Detention Center.  For that reason, I do ask that
10   every other codefendant is out, I believe, on $200,000 personal
11   recognizance bond --
12             THE COURT:  There are a number of who have been
13   remanded.  Each defendant actually has their own story, as you
14   can appreciate, and so not everybody has been released, but
15   there are a number who have been, as we saw this morning.
16             MR. KAPITONOV:  Yes, your Honor.  I understand.  If he
17   is out, there are ways to ensure that he returns to court.  I
18   believe an ankle monitor would be appropriate.  Again, he has
19   people that are willing to cosign.  I believe of the people
20   that are released on bond it is approximately $200,000 bond
21   with two financially responsible persons.  If you would like to
22   increase that, I understand it's necessary.  But I do think
23   that that would be a reasonable bond in this case with ankle
24   monitoring or some kind of GPS tracking for my client.
25             THE COURT:  I still need to get a copy.

1        Do you happen to have a copy, Mr. Adams?

2        MR. ADAMS:  I have to hand it back in as well.

3        THE COURT:  They are sending it up right now.

4        Let me just ask you, Mr. Kapitonov, before you sit down, obviously you've read the indictment and you understand the charges for your client.  You've addressed risk of flight.  As you know, there is also danger to the community.  And so given the nature of the allegations in the indictment, why don't you address that and why the Court, in your view, should not be concerned to the level that would be required under 3142.

12       MR. KAPITONOV:  Yes, your Honor.  These are serious allegations, but they are allegations at this point.  My client has no criminal convictions in the United States.  He does not have convictions in Russia.  He does have the outstanding warrant, I understand that.  Again, that was issued in 2016.  We really don't know anything about it other than the fact that a warrant exists.  But given that, he has no convictions.

19       In terms of the indictment, yes, it is a RICO.  As you see, every count is either a financial crime -- it's either transportation of cigarettes, it is theft of chocolate, from my understanding, and some kind of gambling devices.  It doesn't allege violence except for one instance where it is alleged that my client struck a confidential informant.

25       From my understanding, that does not rise to the risk

1    to the community because, again, it is financial a crime and
2    one issue is the assault which, your Honor, a person -- one, my
3    client is not charged with the assault and, two, a person in
4    that situation is certainly entitled to a bond.  The crimes
5    that are alleged in the indictment are not crimes against the
6    community.  They are more financial crimes for personal
7    benefit.  Again, I believe the majority of it is gambling
8    operations, an attempt to defraud casinos, cigarettes and
9    chocolate, not particularly dangerous crimes.  And I do want to
10   note that my client is listed very seldom throughout the
11   indictment.  He is a member --
12            THE COURT:  He's alleged to be the leader.
13            MR. KAPITONOV:  Yes, your Honor.
14            THE COURT:  I believe this is Mr. Shulaya is alleged
15   to be the primary leader of the entire organization.
16            MR. KAPITONOV:  Right.  Your Honor, the organization
17   itself is not violent.  Again, in the indictment I do not
18   see -- other than what appears to be a personal dispute with
19   one of the confidential informants, I don't see that this
20   organization is a threat to the community as it is.  As
21   alleged, the organization simply is -- the purpose of the
22   organization is to make money.  Again, that is all alleged,
23   your Honor.  And my client shows up very seldom throughout the
24   indictment.  It's mentioned as the leader, but a lot of the
25   other actors are the ones charged with the most serious

H6TMSHU1G2                                                              7
Case 1:17-cr-00350-KBF   Document 247   Filed 08/23/17   Page 7 of 13

1  offenses.  For example, the drug trafficking, my client is not

2  mentioned in that.  For that reason, your Honor, I submit that

3  my client is not a risk to the community.

4              THE COURT:  I just want to make sure we are in

5  agreement on the relevant standard to be applied.  It would be

6  under 18 U.S.C. 3142.  And for risk of flight it would need to

7  be by a preponderance of the evidence, and for danger to the

8  community it's clear and convincing.  Are we in agreement on

9  that?

10             MR. KAPITONOV:  Yes, your Honor.

11             THE COURT:  I have gotten the pretrial services

12 report.  Bear with me folks for one moment.  My deputy has just

13 handed it to me.  Let me just take a look at it, if I could.

14             You can be seated, Mr. Kapitonov, because I'll ask

15 Mr. Adams to address your points in just a moment.

16             MR. KAPITONOV:  Thank you, your Honor.

17             THE COURT:  You had mentioned, Mr. Kapitonov, that

18 your client would have resources, but it doesn't appear that

19 his net worth, as reported to pretrial services, would support

20 very much.  He has only an estimated net worth of $75,000.  I

21 assume that you are retained.  So I assume that a chunk of that

22 would need to go to his legal defense, and he's also got a

23 monthly cash flow which if he were on anything like home

24 detention would mean that he wouldn't have the ability to do

25 the job that he apparently had, which was transportation.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          It doesn't look like he has got any assets.

2          MR. KAPITONOV:  I understand that.  Your Honor, I
3  would ask that if he is allowed to be released that he be
4  allowed to go to and from work.  It is a transportation
5  company, not -- it's not that he travels from state to state.
6  I do understand that his financials are limited.  However, he
7  should not be punished for that.

8          THE COURT:  My point was, also, you were saying, well,
9  the other folks have had a $200,000 bond, but you can increase
10 it for him.  My point is, what's the basis of even suggesting
11 that it could be increased?

12         MR. KAPITONOV:  Right.  Your Honor, I understand.  I'm
13 just saying that the allegations here -- it has to be proven.
14 He doesn't know half the people in the indictment.  This is a
15 very loose organization.  A lot of the things that he's charged
16 with he simply has nothing -- we will get to that later on.  At
17 this point it's only allegations.

18         In terms of flight risk, there is no history of flight
19 risk and if he goes back to Russia he will be arrested.  There
20 goes the motivation for him -- that's why he would stay in the
21 United States.

22         As far as a risk to the community and as a flight
23 risk, he has no history of flight because he has no criminal
24 history.  And, again, as far as risk to the community, it is
25 not alleged that he has a threat to the community.  These are

1  all financial crimes.
2              In terms of money, I understand.  Your Honor, if he's
3  allowed to stay at home and only travel to work, I believe he
4  would be able to meet his financial obligations.
5              THE COURT:  What is your understanding of his job?
6              MR. KAPITONOV:  It is a transportation company.
7              THE COURT:  What's his role in it?
8              MR. KAPITONOV:  Management.
9              THE COURT:  And what does it transport?
10             MR. KAPITONOV:  It is tow trucks.  It leases tow
11 trucks.  It rents them out.  That is the part of the company.
12 He is simply the coordinator, the manager of who it's leased
13 to, where the trucks go and where they come back.  He's not a
14 driver or anything like that.
15             THE COURT:  Where is this Lucas Transportation?  Where
16 are they situated?
17             MR. KAPITONOV:  In Brooklyn, your Honor.
18             THE COURT:  The recommendation I see from pretrial is
19 that he be detained.  They say in terms of pretrial's
20 assessment that there is no condition or combination of
21 conditions that will reasonably assure his appearance, and they
22 are also concerned about safety to the community.  However, the
23 Court makes its own independent determination of bail and I
24 don't rely upon what pretrial has done, though I look at it
25 very, very carefully.

1            Let me hear from Mr. Adams and then you'll have an
2    opportunity, Mr. Kapitonov, to respond.
3            Mr. Adams.
4            MR. ADAMS:  This defendant is absolutely a danger to
5    the community.  He is absolutely a flight risk.
6            Before I get into too deep of a factual proffer, if I
7    can have one second to speak with Mr. Kapitonov about one
8    particular issue.
9            THE COURT:  All right.
10           MR. ADAMS:  Your Honor, can we just approach at side
11   bar, please.
12           THE COURT:  Yes.
13           (Pages 11-12 SEALED by order of the Court)
14
15
16
17
18
19
20
21
22
23
24
25

1              (In open court)
2              THE COURT:  Mr. Kapitonov.
3              MR. KAPITONOV:  Your Honor, can I have one more
4     minute.
5              THE COURT:  Sure, yes.  The other thing we can do is,
6     we can come back later today.
7              MR. ADAMS:  Your Honor, I'm happy to do it now, but I
8     didn't realize this was going to be on the agenda.  I have an
9     11:00 plea.
10             THE COURT:  We will just wait then for Mr. Kapitonov
11    to complete his conference with his client.
12             Where are we?
13             MR. KAPITONOV:  Your Honor, I spoke with my client.
14    He does want to proceed with the bail application.
15             THE COURT:  That's fine.  As he is entitled to do.
16    And I assume that you have raised with him the issue that was
17    raised by Mr. Adams at side bar.
18             MR. KAPITONOV:  Yes.
19             THE COURT:  As your client understands, that will be
20    now be raised in open court.  It is not a sealed proceeding.
21    It is a public proceeding.  The issue will be raised.  I'll say
22    it again in open court.  This is not a sealed proceeding.  It's
23    going to be a public proceeding.  The transcript will be
24    available and I would note that there is also a representative
25    of the press in the room.  And, therefore, Mr. Shulaya should

1   expect that it would receive widespread attention.

2         With that, if he is prepared to proceed, we are
3   prepared to proceed.  The Court is willing to hear any bail
4   application you would like to make.

5         Mr. Adams.

6         MR. KAPITONOV:  Your Honor, may I have one more
7   minute.

8         THE COURT:  Yes.

9         MR. KAPITONOV:  Yes, your Honor.  After speaking with
10  my client, we would like to continue this at a later date.

11        THE COURT:  Here is what I would suggest.  It is
12  easier, I think, for all of us to have, if possible, a written
13  submission in advance.  And that way I can see, Mr. Kapitonov,
14  all of your bases for making a bail application, and you will
15  be able to then and the Court will be able to review the
16  government's position in detail in advance.  Then with all of
17  that information in front of us, I'll be able to then come out
18  on to the bench more fully prepared to address the application.
19  If you'd like to proceed at a later date, that's the way I
20  would prefer to do it.

21        However, let me reiterate that either now or at any
22  other time I stand ready to hear a bail application from any
23  defendant.  I always make it an absolute priority.  Do you want
24  to set a time now down in July or do you want to just confer
25  with the government on a time and get back to me?

1               MR. KAPITONOV:  I would prefer to confer with the
2      government and get back to you.
3               THE COURT:  That's fine.
4               Is there anything else we should do right now, folks?
5               MR. KAPITONOV:  No, your Honor.
6               MR. ADAMS:  Your Honor, for the reasons stated at side
7      bar, I would just ask that that portion of the transcript be
8      placed under seal.
9               THE COURT:  Just that portion then will be placed
10     under seal, just the portion at side bar.
11              Thank you.  We are adjourned.
12                                  o0o
13
14
15
16
17
18
19
20
21
22
23
24
25