```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              17 Cr. 350 (KBF)

RAZHDEN SHULAYA,
MAMUKA CHAGANAVA,
GIORGI LOMISHVILI,
EREKLE KERESELIDZE,

                Defendants.
------------------------------x
                                            New York, N.Y.
                                            June 29, 2017
                                            9:45 a.m.
Before:

                HON. KATHERINE B. FORREST,

                                            District Judge


                        APPEARANCES


JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
ANDREW ADAMS
     Assistant United States Attorney

MUSA-OBREGON & ASSOCIATES
     Attorneys for Defendant Shulaya
PETER KAPITONOV

LOWENFELD LAW FIRM
     Attorneys for Defendant Chaganava
JULIA LOWENFELD
```

```
 1                      APPEARANCES (cont'd)

 2   AARON M. RUBIN
     KARINE BOGORAZ
 3        Attorneys for Defendant Lomishvili

 4   CROWELL & MORING LLP
          Attorneys for Defendant Kereselidze
 5   GLEN G. McGORTY
     JEFFREY M. SEVERSON
 6
     ALSO PRESENT:  NELLY ALISHAEV, Interpreter (Russian)
 7                  LASHA GEGECHKORI, Interpreter (Georgian)
                    NESHAUN RICHARDS, FBI
 8                  ROBERT HANRATTY, FBI
```

1            (Case called)

2            MR. ADAMS:  Good morning, your Honor, Andrew Adams for
3    the government.  With me at counsel table this morning are two
4    FBI agents, Neshaun Richards and Rob Hanratty.

5            THE COURT:  Good morning, all of you.

6            MR. KAPITONOV:  Good morning, your Honor, for Mr.
7    Shulaya, Peter Kapitonov from Musa-Obregon & Associates.

8            THE COURT:  Good morning, Mr. Kapitonov.

9            MS. LOWENFELD:  Julia Lowenfeld for Mamuka Chaganava.

10           THE COURT:  Good morning, Ms. Lowenfeld.

11           MR. RUBIN:  For Mr. Lomishvili, Aaron Rubin and my
12   associate, Karine Bogoraz.

13           THE COURT:  Good morning, all of you.

14           MR. McGORTY:  Glenn McGorty and Jeff Severson for
15   Erkle Kereselidze.

16           THE COURT:  I see that each of the defendants is also
17   present here in court this morning.  And I note that a couple
18   of them, three of the defendants are wearing the equipment that
19   allows you to hear the translation.

20           From time to time the equipment malfunctions.  If you
21   can't hear, if you need to have it turned up or if the battery
22   runs out, that's usually the nature of the malfunction.  Raise
23   your hand, let your lawyer know, let us know, and we will get
24   it all fixed.

25           All right?

1   I'm seeing nods of the head yes from each of the
2   defendants.  Terrific.
3   I understand that each of the four defendants who are
4   here today have already been presented and arraigned.  Am I
5   right about that?
6   MR. ADAMS:  That's correct, your Honor.
7   THE COURT:  So we are here really for the purpose of
8   having an initial conference and to get you folks up to speed
9   with where the remaining defendants are at this point.
10  Why don't you go ahead, Mr. Adams, and -- I thought it
11  was Mr. Thompson.  It's Adams.
12  MR. ADAMS:  This is Adams.  The other one is Thomas.
13  THE COURT:  The other fellow is Thompson, and he has
14  the confusing way of being called Andrew Thompson and you are
15  Andrew Adams.
16  MR. ADAMS:  That's correct.  It's his fault.
17  THE COURT:  Why don't you give everybody an overview
18  as to the discovery in this case.
19  And before you start, let me just recommend to all
20  counsel and the defendants that you folks review the transcript
21  of the prior proceeding with the large group of defendants.
22  The reason for that is there was about a two-hour description
23  of all of the evidence in the case.  It was a very lengthy,
24  detailed description.  So I don't expect we will be doing that
25  again today right now.  It will be more of an overview.  I

recommend to you folks to get up to speed by going through all of that.

        With that said, Mr. Adams, why don't you go ahead and do however much detail you think is necessary to do this morning.

        MR. ADAMS: Thank you, your Honor. I certainly won't do the level of detail as we did in the first conference.

        But just generally speaking, the discovery in the case consists of a long length of recordings, both from body wire recordings from a number of confidential sources, as well as the recordings over a number of consensually recorded telephones, also used by the same confidential sources, and then about six months' worth of nonconsensual Title III wiretaps over the phones of three particular defendants, including four phones belonging to Mr. Shulaya, who is here today. His phones, those four phones were targets for the entire length of that six-month period. There is a substantial number of recordings spanning many, many hours of conversation.

        In addition, there will be the applications and the process served to obtain all of those recordings and all of that material. There are a handful of e-mailed search warrants and returns from the e-mail search warrants. Those have to do mostly with some of the identity theft or the access device fraud elements of the case that none of the e-mail accounts belong to any of the defendants in the room today, but they do

1  relate to some of the criminal schemes that are alleged to have
2  involved some of the people in the room today.
3      There will be geolocation information.  There will be
4  physical surveillance material, including reports from the FBI
5  of different meetings between confidential sources or just
6  surveilled meetings not involving the confidential sources.
7  There will be photographs of the same.  I mentioned a video
8  from the interior of what we call the poker house, which was an
9  illegal gambling establishment.  We will be providing that as
10 well.  And that's many hours of sort of the internal affairs of
11 this -- it's a room or a couple of rooms above a particular
12 restaurant in Brighton Beach where not only illegal gambling
13 took place, but a few assaults took place as well.  Two of
14 those are on video from that video system.
15     Those are the key parts of the discovery.  Again,
16 there is much more detail in the prior transcript.  I've had
17 some conversations already with each counsel here today and
18 will have more conversations going forward to act as a
19 spotlight on what parts of discovery are particularly relevant
20 to those defendants.
21     For an update for the Court with respect to discovery,
22 earlier this week, after we received the protective order and
23 received a handful of stipulations from a number of different
24 parties regarding the transcripts and the draft translations,
25 we have begun producing discovery.  To date I think we have

1  pushed out about 2,500 pages. Most critically, those are the
2  wiretap applications, applications for other warrants, and a
3  handful of the returns from particular kinds of electronic
4  discovery, like e-mail -- 2703 orders that include the header
5  information, the to-from information from some e-mail accounts
6  that we were looking at.
7         In the next couple of days we will be collecting the
8  confidential source transcripts and the line sheets. We will
9  be producing those just as soon as we have the stipulations
10 governing how those transcripts can be used. We have
11 stipulations, I think, from a majority of the defendants at
12 this point. So they should be rolling out pretty quickly.
13        Then over the next couple of days and weeks we will be
14 producing the recordings themselves, both from the
15 nonconsensual Title III, the recordings from the consensual
16 Title IIIs, and the body wire recordings and the e-mail
17 warrants as well.
18        The largest unknown at the moment is the volume of
19 material from the electronic devices that were seized on the
20 day of the takedown in this case. I think I mentioned at the
21 prior conference that there were over 150 different devices.
22 That's absolutely the case and we received a warrant last
23 Thursday covering substantially all of the devices that were
24 seized. So those have been taken to the FBI's cart review
25 team, where they have a priority list in place now, and we will

1   begin seizing and searching the contents of those devices in

2   the next days, weeks, and likely months ahead as we move

3   forward.  We are trying to prioritize that in various ways and

4   we will keep the Court informed as to where we are on that and

5   we will keep defense counsel up to date as well.

6              THE COURT:  Thank you.

7              Let me fill in some dates that we have to make sure

8   you folks are aware of it.  The production, as I understand it,

9   from the government, Mr. Adams will confirm this, will be

10  produced on a rolling basis between now and July 24.  You are

11  not behind in the sense that not that much has actually gone

12  out the door because of the volume and the nature of the

13  materials.  It's going to be rolled out between now and July

14  24.

15             What I have asked counsel to do is, whether

16  individually or through some sort of coordinated effort, up to

17  you folks, you may or may not be able to coordinate and so

18  that's fine.  But what I want to do is by August 11, 2017, I

19  would like to have a letter that proposes a schedule for

20  motions.

21             In particular, you will note from the conference that

22  we had when you look at the transcript of that conference that

23  I'm anticipating that there may be some suppression motions

24  possibly and there may be other types of motions.  And what I

25  really want to do is make sure if there are going to be

1   suppression motions, that's the kind of thing that typically
2   can be identified, not always, earlier than some of the other
3   types that may require you to really delve into what is really
4   a massive amount of discovery.
5           What I'd like to do is to get a sense of any
6   suppression motions that you understand you may be wanting to
7   file and then a proposed schedule for that.  What I will do
8   then is set down time, depending upon the nature of any such
9   motions, for suppression hearings without yet knowing whether
10  or not we are going to have a hearing because we have got so
11  many counsel that if people are interested in participating in
12  a suppression hearing, I want to make sure we get it scheduled
13  far enough in advance so we can accommodate people's schedules.
14          Basically, on August 11 you are not expected to know
15  all of your motions.  You are certainly not expected to be
16  filing anything at that point apart from a letter that gives me
17  a sense as to what your expectation is as to if you've got a
18  suppression motion when you would be able to file it, and then
19  give me a sense as to the other motions, not in terms of type,
20  but when you might be able to file such motions, if there are
21  any.  It's really what I am going to call a check-in
22  establishing a schedule for motions.
23          Now, it is, I think, clear that the discovery in this
24  case is really quite large, it's quite significant, and that
25  you may have motions that are going to come to light that will

1  not be apparent to you until sometime this fall at some point.
2  I am not going to prevent you from making those motions.  But I
3  do want to get the kind of things that we can identify early
4  taken care of.
5       If, for instance, there are records that you don't get
6  until the 24th of July and it's a terabyte worth of
7  information, I'm not going to expect that you've identified
8  some small issue buried within that terabyte by August 11.
9  That's not what I'm expecting at all.  But if your client
10 happened to be, for instance, Mr. Shulaya, the subject of a
11 search warrant, it may well be that you are able to easily
12 identify whether or not there is a viable suppression motion.
13 I'm not asking you to file it, but to identify it.
14      For those who have postarrest statements, same thing.
15 If you've got any postarrest statements, that's the kind of
16 thing where it's a couple of pieces paper, perhaps, and/or a
17 videotape, and you can get that taken care of, in terms of
18 whether identifying a motion or not, whether you want to do
19 that.  That's August 11.
20      I'm looking at, by the way, an order that is on ECF at
21 102.  It's on the docket at entry 102, just so you understand
22 what I'm looking at here.  This has all been written down.
23      We will have a conference with the assembled multitude
24 on September 8, 2017, at 11 a.m., unless the marshals tell me
25 that we can't.  But we were able to do it last time.  Those

1  individuals who are in custody we have in one place and we
2  basically use the audience area. We just sort of fill in and
3  work our way back so we can all be present. It may be the case
4  that we will have so many people by that point that we will
5  need to split people into separate groups and we will see.
6      Now, as part of that we have talked about the fact
7  that the government will need to at some point separate the
8  defendants into logical groups for trial purposes. That's
9  because we simply can't try the case, as you folks know, with
10 this number of defendants. So the government in advance of the
11 September 8 conference is going to give us their preliminary
12 breakdown of those groupings. What we may do is, depending
13 upon the number of groupings, who is in the groupings, etc., we
14 may have the conferences rolled out from there, in other words,
15 we might do group A at 11 a.m., group B at 11:30, group C at
16 noon, however it works. We will all know more about that once
17 we get the letter from the government.
18     People raised during the last conference the potential
19 of motions for severance. Not saying that there was any such
20 motion, but just sort of raising it when you've got this many
21 people in a case. And we all, at least I believe my statement
22 was, sufficient unto the day. That's very far into the future.
23     Those I think were the major pieces. One other piece
24 from my perspective which is at our next conference I would
25 expect to set a trial date. I wouldn't set it today because

1   the discovery is just too voluminous to even have you folks be
2   able to report on how long it will take you to get through it.
3   My expectation, based upon what I've heard from the government
4   so far, is we would be at trial somewhere in the nature of a
5   year from now, a year from this fall, so people will need to
6   coordinate on their trial schedules.  And what we would do is
7   try people seriatim in whatever groupings the government wants.
8   We wouldn't have the trials be separated by more than whatever
9   we need to resolve one.
10          Let's, again, pick group A.  If group A is going to be
11  comprised of an entire trial group, we try that together.  We
12  would go immediately into B and then immediately into C.  We
13  are not going to separate them out by months or anything of
14  that nature.  Just in case that plays into how people are
15  thinking about timing and other relevant issues that might be
16  called into play with that.
17          We will talk about trial dates at the September
18  conference, but it would be something, I think, in about the
19  vicinity of a year.  There is a Speedy Trial Act.  And if any
20  defendant wants to go to trial sooner, we will accommodate
21  that, and we will try anything that we need to try as soon as
22  you folks need to try it.  But if the defendants don't believe
23  that they will have the opportunity to properly prepare for
24  some period of time, that's why I'm talking about a year from
25  now.  But I want to make it clear that if any defendant wants

1  to proceed to trial more quickly, obviously you've got a right
2  to do that unless there is a particular finding that alters
3  that.
4          Questions from defense counsel at this point.  Not
5  hearing anything.
6          Mr. Adams, anything else from you?
7          MR. ADAMS:  The only other update, your Honor, just
8  has to do with the defendants you have not seen yet.  There are
9  four who were arrested at various times in the Southern
10 District of Florida.  The marshals have given me their best
11 estimate as to when they will get up here, shortly after the
12 July 4 holiday.  As soon as they are, I'll alert the Court and
13 set up another conference for that.
14         THE COURT:  That will be the last four.
15         MR. ADAMS:  The last person, Mr. Savgir, was arrested
16 just yesterday.  He is going to be presented and arraigned
17 today, and I'll set up a time at the Court's convenience for a
18 conference for him as well.
19         THE COURT:  If he's going to be arraigned today, he
20 might be able to be folded into the conference with the other
21 folks.
22         MR. ADAMS:  If it's all right with the Court, I'll
23 have him arraigned today, reach out some time after the July 4
24 date, assuming that the other four are here, and try and just
25 do one.

1           THE COURT:  I think that would be terrific.  That way
2  we will do exactly what we have done today.  We will get them
3  on the same schedule and we will all then be on the same
4  schedule for at least this initial stage in figuring out where
5  our motions are going to go and who is going to trial in what
6  grouping.
7           MR. ADAMS:  Thank you, your Honor.
8           THE COURT:  When do you think, Mr. Adams, you'll get
9  that grouping letter together?
10          MR. ADAMS:  To give people enough time to argue about
11 it on September 8, I am going to endeavor to do it around the
12 time of August 11 also.  I don't think that should be a
13 problem.
14          THE COURT:  I would not expect that everybody would
15 need to raise any issue they have about the grouping in advance
16 of that September 8 conference.  We can actually talk about
17 that some at the conferences.  And if people think they belong
18 in one group versus another or not with this person and not
19 with anybody, we can sort of surface that.  We will get some
20 trial dates set.  And depending upon the groups the people are
21 placed into at that time or moved into subsequent to that, if
22 there are any shifts between groups, then we will address that.
23 But we will get the trial dates sort of cemented, I would hope.
24          We had talked in the last conference, this is my last
25 thing, about the fact that there may be some way of defense

1   counsel coordinating on schedules, or not.  I know that
2   Ms. Sternheim, Bobbi Sternheim, had spoken a lot during the
3   last conference, not too much, by any means, I don't mean to
4   suggest.  I just mean that she was standing up articulating a
5   variety of positions.  I don't know if she is somebody who has
6   already taken on such a role.  You folks will figure that out.
7   To the extent that I'm able to get coordinated calendars for
8   some of these trial dates, that would really be helpful for all
9   of us.
10              Anything else?
11              MR. ADAMS:  No, your Honor.  Time was excluded through
12   September 8 last time.  No need to further exclude time.
13              THE COURT:  As you all know, in this kind of case the
14   exclusion of time that's already occurred would be applicable
15   to all of the defendants.  Let me just solicit so we have it
16   for the record.  Is there any objection to the exclusion of
17   time by any of the defendants here?  That exclusion is up to
18   September 8, 2017.  Any objection to that exclusion?
19              MR. KAPITONOV:  No, your Honor.
20              MS. LOWENFELD:  No, your Honor.
21              THE COURT:  I'm getting nods of the head no from
22   everybody else.  Time is excluded for the same reasons set
23   forth on the record in the prior transcript to which I
24   referred.
25              MR. KAPITONOV:  Your Honor, I apologize.  I did want

1  to address the issue of bail in regards to my client.  I'm
2  wondering if you would be able to do that right now.
3            THE COURT:  We can do that right now.  Why doesn't
4  everybody who doesn't need to be here can go ahead and leave.
5  He is the only one in custody.  Everyone else is excused and we
6  will take that up right now.
7                                o0o