

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 16, 2017

**BY ECF/EMAIL TO CHAMBERS**
Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE:   *United States* v. *Razhden Shulaya,* 17 Cr. 350 (KBF)

Dear Judge Forrest:

The Government writes to request that the Court 1) convene a conference to explore a the possibility of a conflict as between the defendant Razhden Shulaya and his counsel, Christopher Shella, Esq.; and 2) vacate its prior order of September 29, 2017, endorsing a request by counsel for Razhden Shulaya to have an "interpreter," Tatiana Baranova, a/k/a "Tatiana Montana," enter the MDC with counsel during legal visits with Shulaya. Baranova is, in fact, an associate of Shulaya and a witness regarding the charges against Shulaya, whom the Government believes to be attempting to evade MDC restrictions on social visits.

**Factual Background**

**A.  Applications by and on behalf of "Tatiana Montana"**

According to documents provided by the Metropolitan Detention Center, where Shulaya is currently detained, several communications and applications for entry to the MDC have been received from an individual using the names "Tatiana Baranova" and "Tatiana Montana." On or about September 13, 2017, "Tatiana Montana" applied to enter the MDC as an interpreter employed by Shulaya's counsel, Christopher Shella. Approximately six days later, on September 19, 2017, the MDC received an email from "Tatiana Baranova," which attached a letter appearing to be from Shella & Associates LLC, Mr. Shella's law firm, which read, in part, "Please take note that Tatiana Montana is a paralegal in my firm and is empowered to act on my behalf on all matters in my cases on my behalf with my full blessing." Attached to this letter was an application for entry into the MDC as a representative of a licensed attorney, *i.e.*, to conduct unmonitored visits with Shulaya (the "Paralegal Application"). The name of the paralegal as provided on the Paralegal Application was "Tatiana Montana" and the birthdate provided was for a particular date in 1984 (the "Montana Birthdate"). The Paralegal Application further stated that "Tatiana Montana" had an existing social relationship with Shulaya, whom Montana described as a "friend."

On or about September 20, 2017, a representative of the MDC responded to the Paralegal Application with three follow-up requests, including a request for a further explanation of Montana's relationship with Shulaya.  On or about September 22, 2017, "Montana" responded via email, stating, in part, "my name is Tatiana Montana . . . I have attached a letter to be removed from a social visit list that I was on [in order that I might be permitted] to communicate legal information from Razhden Shulaya's attorney Christopher Shella whom I currently work for as a paralegal and interpreter.  My communication with Razhden Shulaya before his imprisonment was a casual friendship."

On or about September 28, 2017, the MDC denied "Montana's" application.  Among other things, the denial letter noted that "[t]o enter MDC Brooklyn as a paralegal[,] MDC Brooklyn requires one of the following from their applicants[:] [be] a law school graduate, provide a copy of their paralegal certificate or have a minimum of six months experience working as a paralegal." The MDC further noted that "Montana" had not provided documentation sufficient to meet any of those prerequisites.

On or about September 29, 2017, the Court endorsed and docketed a letter from Shulaya's counsel that had not been previously filed on the public docket and which was dated September 26, 2017.  The letter stated, in part, that Shulaya had "hired a qualified interpreter to translate ou[r] conversations and I applied to MDC over two weeks ago to have this handled. . . . I have attached my interpreters resume and certification and I ask the court to order MDC to allow her in to assist in my client's case."  The Court "so ordered" the requested relief on or about September 29, 2017, and filed the letter on the Court's electronic docket as Document 311.  The letter as docketed did not refer to the name of the interpreter, but documents provided by the MDC indicate that this application referred to Baranova, a/k/a "Montana."

### B.  Tatiana Baranova's Involvement in the Investigation to Date

"Tatiana Montana" is Tatiana Baranova, as evidenced by the name on the September 19, 2017, email to the MDC; the Paralegal Birthdate, which matches the birthdate on Baranova's driver's license and certain immigration documentation; and "Montana's" address as provided on the Paralegal Application, which matches an address provided by Baranova to Shulaya during calls intercepted over Shulaya's cellular telephones.  Baranova was identified in the course of the FBI's investigation through, among other things, physical surveillance and intercepted telephone calls over certain of Shulaya's cellular telephones.  For example, the two engaged in multiple conversations regarding the procurement of cocaine for personal use and about Shulaya's relationships with others charged in this case as members of the Shulaya Enterprise (including Azer Arslanouk and Avtandil Khurtsidze).  On or about February 28, 2017, Baranova and Shulaya engaged in a discussion that included references to Shulaya's status as a "Vor."  More recently, on calls recorded by the MDC when Baranova was listed as a social vistor and provided to the Government, Baranova (using the same telephone number intercepted during the wiretaps of Shulaya's phones) has continued to discuss Shulaya's criminal associates and Baranova's provision of funds to Shulaya in prison.

## Applicable Law

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002).

District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

The Government currently takes no position as to whether Shulaya's counsel labors under a *per se* or an actual conflict. *Cf. Armienti* v. *United States*, 313 F.3d 807, 810 (2d Cir. 2002) (describing types of conflicts); *Armienti* v. *United States*, 234 F.3d 820, 823-24 (2d Cir. 2000) (same). However, a potential conflict, at the least, warrants inquiry by the Court in this case. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States* v. *Klitti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).[1]

---

[1] Judge Kaplan has observed that

> The Second Circuit has considered a number of different factors in determining whether a conflict can be waived including, among other things, (1) whether disqualifying the defendant's chosen counsel would create "real prejudice" to the defendant based on the length of the representation and/or counsel's familiarity with the case, (2) whether there is a possibility that the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes, (3) whether the continued representation would conflict with the attorney's own personal financial or liberty interests, as opposed to the interests of a current or former client, (4) whether, if the conflict concerns the interests of another client, the attorney's relationship with the other client is continuing or has been terminated, (5) whether any other current or former client affected by the conflict has initiated or joined in the motion to disqualify defendant's chosen counsel; and (6) the availability of measures that might limit the dangers posed by the conflict, such as restricting an attorney's cross-examination of a former client.

* * *

The facts set forth above present at least the potential for a conflict insofar as Baranova's applications to the MDC, and Mr. Shella's sponsorship of those applications, raise the possibility that Mr. Shella is a witness to an attempt by Shulaya's associate to make false representations in order to obtain unmonitored contacts with Shulaya.  The Government therefore respectfully requests that the Court convene a conference to discuss any actual or potential conflicts.

The Government further requests that the Court vacate the September 29, 2017, order allowing Baranova, a/k/a "Montana," to enter the MDC as an interpreter, pending further development of the facts as they relate to Baranova's purported employment by Mr. Shella.

<div style="margin-left: 40%;">

Respectfully submitted,

JOON H. KIM
Acting United States Attorney


by: ___/s/__ Andrew C. Adams_____
Andrew C. Adams
Assistant United States Attorneys
(212) 637-2340

</div>

_____

*United States* v. *Stein*, 410 F. Supp.2d 316, 328 (S.D.N.Y. 2006) (international citations omitted).