```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                    17 Cr. 350 (S.D.N.Y.) (KBF)
        -  v.  -

RAZHDEN SHULAYA and
AVTANDIL KHURTSIDZE

                        Defendants.
-----------------------------------------------------------X
```

**MOTION *IN LIMINE* TO PRODUCE *BRADY* AND *GIGLIO* MATERIAL**
**(Motion *in Limine* No. 3)**

Defendants Razhden Shulaya and Avtandil Khurtsidze jointly move to for an order directing the Government to produce all *Brady/Giglio* material at this time.

### 1. The Court Should Order the Government to Produce Identifying and Pedigree Information for Its Cooperating Witnesses and *Brady* and *Giglio* Material Now

The Government's evidence against Shulaya and Khurtsidze is principally based on information provided by cooperating witnesses. To effectively and properly investigate the criminal backgrounds of the cooperating witnesses, it is necessary that their respective "pedigree" and identifying information be produced. The Government cannot provide any justifiable reason for not providing this information now. The only reason for the Government's decision to not disclose this information is to gain an unfair strategic and tactical advantage and deny Shulaya and Khurtsidze's constitutional right to a fair trial. This is evidenced by the Government's expected timetable for the disclosure of information related to its witnesses that we now seek.

It is the Government's practice that *Giglio* material, along with Jencks Act material be produced on the Friday before the testimony of any witness, or, if the material is voluminous,

further in advance. Regarding their cooperating witnesses' criminal histories, the Government typically only provides a "rap sheet." Under this expected plan and timetable for disclosure, we will not have close to the necessary time to investigate the backgrounds of the cooperating witnesses. Investigation of their backgrounds will involve contacting and traveling to courthouses and other places in New York, other states, and possibly internationally, to review files related to their underlying criminal matters, searching and locating other records, applying for Rule 17 subpoenas, and possibly speaking with other witnesses, all while we are preparing for other important aspects of the trial. This limited time period will not afford us an opportunity to locate and "meaningfully use" the impeachment evidence of the Government's witnesses.

Ultimately, we will be forced to rely on the Jencks Act material as the exclusive source of impeachment evidence. Such relegation is by design. Should we be constrained to rely exclusively on what the cooperating witnesses have told the Government about their criminal histories, the Government has effectively controlled the universe of impeachment evidence and is able to prepare their witnesses accordingly. In a trial where Shulaya and Khurtsidze are facing considerable sentences, and the credibility determination of the cooperating witnesses will be a critical task for the jury, this is patently unfair.

The Government's expected timetable for disclosure also runs afoul of *Brady* and its progeny regarding the timing of disclosure. *See Leka v. Portuondo*, 257 F.3d 89, 99-103 (2d Cir. 2001)("the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use"); *Disimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006)("the more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an opportunity for use"). Accordingly, we respectfully request that the Court, pursuant to fundamental fairness and

constitutional due process, order the Government to immediately produce all identifying information, specifically all names and aliases and dates of birth, related to the cooperating witnesses so that we can adequately conduct our investigation and prepare a trial defense for Shulaya and Khurtsidze.

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, the Government must promptly provide to the defense any exculpatory evidence, including evidence favorable to a defendant. The term "exculpatory," as used in the *Brady* context refers to evidence that is exculpatory and also evidence that may be used to impeach the Government's witnesses. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972). As to the former, the United States Supreme Court has emphasized the critical importance of impeachment evidence to an accused. For instance, in *Bagley*, the Supreme Court held that impeachment evidence of the Government's witnesses is evidence "favorable to an accused," (citing *Brady*, 373 U.S. at 87), "so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." 473 U.S. at 676; *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."); *Davis v. Alaska*, 415 U.S. 308 (1974) (failure to disclose requested *Brady* information in order to conduct an effective cross-examination threatens the defendant's right to confront adverse witnesses, and therefore, his right to a fair trial). Consequently, we respectfully request that the Court order the Government to produce immediately the following:

    a.    Information which can be used to impeach the cooperating witnesses including matters which might or could motivate their testimony, including copies of plea agreements or other agreements providing for

3

cooperation in exchange for favorable treatment by the Government, as well as any acts of criminal, immoral or vicious conduct by said persons during their lifetime and factors which might have a bearing upon any bias or hostility of either of them toward Shulaya or Khurtsidze;

b. Full disclosure of any consideration, promise of consideration, or expectation of consideration offered to the cooperating witnesses, including but not limited to, leniency, favorable treatment, assistance with respect to any pending legal proceeding, or any reward or other benefit whatsoever which could be realized by either of them as a result of their testimony;

c. Any record of previous arrests or convictions or any other evidence or information demonstrating participation in dangerous, vicious, immoral or criminal behavior on the part of the cooperating witnesses, including but not limited to "rap sheets," police personnel records, or other memoranda;

d. Any statements known to be false or erroneous made to a public servant engaged in law enforcement activity or a grand jury or a court by the cooperating witnesses;

e. Any evidence, testimony, transcript, statement or information indicating that a cooperating witnesses, on any occasion gave false, misleading or contradictory information regarding the charge at bar or any related matters, to persons involved in law enforcement or to their agents or informers;

f. Any evidence, testimony, transcript, statement or information indicating that any cooperating witness has given statements which are or may be contradictory to each other or inconsistent;

g. Any information indicating that a cooperating witness has or had a history of substance abuse and or mental or emotional disturbance;

h. Any threats, express or implied, direct or indirect, made to a cooperating witness, including criminal prosecution or investigation, any change in the immigration, probationary, parole, or custodial status of the witness, or any other pending or potential legal disputes between a cooperating witness and the Government or over which the Government has a real, apparent, or perceived influence;

i. Any evidence tending to show the existence of an affirmative defense, such as entrapment or self-defense; and

j. Any evidence of the financial records of "the Poker House," including but not limited to records of dates and times of gambling operations, records

of the distribution of funds, amounts of proceeds received and retained by the cooperating witnesses.

This Court, because of fundamental fairness and constitutional due process, can order pretrial disclosure of *Brady/Giglio* material now pursuant to its supervisory capacity to ensure sound case management: *United States v. Stein*, 424 F. Supp. 2d 720, 725 (S.D.N.Y. 2006) (district court is free to order pretrial disclosure as a matter of "sound case management"); *United States v. Starusko*, 729 F.2d 256 (3rd Cir. 1984) (noting that Brady information which will require defense investigation or more extensive defense preparation should be disclosed at an early stage of the case); *United States v. Hong*, 545 F. Supp. 2d 281, 282 (W.D.N.Y. 2008)(fundamental fairness and the constitutional due process requirements which underlie the *Brady* mandate provide a court with the discretion to order the timing of the disclosure of such information, even if it may be considered combined *Brady*/3500 material).

Because the strength of the Government's case largely depends on the credibility of the cooperating witnesses, this Court should not allow the Government to gain any unfair advantages in intentionally delaying the production of *Brady/Giglio* material. Should we be forced to wait until a time close to trial, or once the trial commences, to receive such impeachment material, it will be too late to effectively prepare to cross-examine the cooperating witnesses. This will undoubtedly affect Shulaya and Khurtsidze's constitutional right to a fair trial.

## **CONCLUSION**

For the foregoing reasons, Shulaya and Khurtsidze respectfully request that the Court grant their motions *in limine*.

5

Dated: New York, New York
April 23, 2018

Respectfully submitted,

___/s/ Megan Wolfe Benett_____
Megan Wolfe Benett, Esq.
750 Third Avenue, 32nd Floor
New York, NY 10017
(212) 973-3406
(212) 972-9432 (fax)
mbenett@kreindler.com
*Attorney for Defendant Avtandil Khurtsidze*

___/s/ Arthur Ken Womble_____
Ken Womble, Esq.
Zeman & Womble, LLP
66 Willoughby Street
Brooklyn, NY 10013
(718) 514-9100
(917) 210-3700 (fax)
womble@zemanwomblelaw.com
*Attorney for Defendant Avtandil Khurtsidze*

___/s/ Anthony Cecutti_____
Anthony Cecutti, Esq.
The Astor Building
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 619-3730
Cell: (917) 741-1837
Fax: (212) 962-5037
anthonycecutti@gmail.com
*Attorney for Defendant Razhden Shulaya*

___/s/ Jennifer Rushing Louis-Jeune_____
Jennifer Rushing Louis-Jeune
Law Office of Jennifer R. Louis-Jeune
733 3rd Avenue, 15th Floor
New York, NY 10017
212-203-9058
Fax: 212-219-0958
Email: Jennifer@JLJLaw.com
*Attorney for Defendant Razhden Shulaya*